Jim FITZGERALD and Ellen J. Rindal, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

CHRYSLER CORPORATION,
Defendant–Appellee.

No. 96–3447.

United States Court of Appeals,
Seventh Circuit.

Argued May 15, 1997.

Decided June 13, 1997.

H. Joshua Chaet, Daniel A. Edelman (argued), Beth I. Solomon, Edelman & Combs, Christopher V. Langone, Chicago, IL, for Jim Fitzgerald.

H. Joshua Chaet, Daniel A. Edelman, Edelman & Combs, Christopher V. Langone, Chicago, IL, for Ellen J. Rindal.

Kendall R. Meyer, Todd A. Rowden, Wilson & McIlvaine, Chicago, IL, Charles A.

Newman (argued), Bryan Cave, Roman P. Wuller, Christopher M. Hohn, St. Louis, MO, for Chrysler Corporation.

Before POSNER, Chief Judge, and KANNE and EVANS, Circuit Judges.

POSNER, Chief Judge.

This is a consumer class action for warranty fraud, brought under the RICO ("Racketeer Influenced and Corrupt Organizations") statute, 18 U.S.C. §§ 1961 *et seq.*, against the Chrysler Corporation. The district judge dismissed the suit for failure to state a claim under RICO, and we therefore take the facts alleged in the complaint as true, of course without vouching for their truth. According to these allegations, Chrysler sold to the consumers of its motor vehicles extended warranties promising all sorts of warranty protection that Chrysler had secretly determined not to provide, so that when a consumer would bring in his Chrysler to a dealer for repairs covered by the express terms of the extended warranty and later sought reimbursement from Chrysler for the expense of the repairs, Chrysler refused to pay.

So far as bears on this case, RICO prohibits a "person ... associated with any enterprise ... to conduct ... such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The "person" need not be a natural person, 18 U.S.C. § 1961(3), so Chrysler is a person within the meaning of the Act. *Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1306 (7th Cir.1987); *Haroco, Inc. v. American National Bank & Trust Co.,* 747 F.2d 384, 400 (7th Cir.1984), aff'd. on other grounds, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). "[R]acketeering activity" is a term of art that includes violating the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343; see 18 U.S.C. § 1961(1)(B), and the complaint charges Chrysler with a number of such violations all in furtherance of the scheme of warranty fraud. We may assume, though without having to decide, that the complaint alleges a "pattern" of such violations, leaving only the question whether Chrysler may be said to have been "associated with an enterprise" and to have "con-duct[ed] ... such enterprise's affairs through" the wire and mail frauds. The enterprise alleged, taken most broadly, is a "Chrysler family" consisting of subsidiaries of the Chrysler Corporation engaged in various facets of production, financing, and marketing of Chrysler automobiles, plus Chrysler's dealers, plus trusts controlled by Chrysler that in essence resell retail installment contracts for the purchase of Chrysler automobiles to the investing public. The plaintiffs argue that all these affiliates and agents participate directly or indirectly in the retail sale of Chrysler automobiles and accessories, of which the extended warranty is one; hence the affairs of the entire "enterprise" may be said to be conducted through the alleged pattern of fraudulent acts. Actually the plaintiffs carve up the medley of Chrysler entities into three different enterprises; but as none of the combinations of different members of the Chrysler family adds up to a RICO enterprise, it makes no difference how they are sorted.

Read literally, RICO would encompass every fraud case against a corporation, provided only that a pattern of fraud and some use of the mails or of telecommunications to further the fraud were shown; the corporation would be the RICO person and the corporation plus its employees the "enterprise." The courts have excluded this far-fetched possibility by holding that an employer and its employees cannot constitute a RICO enterprise. E.g., *Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1063 (2d Cir.1996); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 268 (3d Cir.1995); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 343–44 (2d Cir.1994). We do not understand the plaintiffs to be quarreling with this exclusion, even though it doesn't emerge from the statutory language; it emerges from a desire to make the statute make sense and have some limits.

When a statute is broadly worded in order to prevent loopholes from being drilled in it by ingenious lawyers, there is a danger of its being applied to situations absurdly remote from the concerns of the statute's framers. Courts find it helpful, in interpreting such statutes in a way that will avoid

absurd applications—a conventional office of statutory interpretation, even under "plain language" approaches, e.g., *United States v. X–Citement Video, Inc.,* 513 U.S. 64, 69–70, 115 S.Ct. 464, 467–68, 130 L.Ed.2d 372 (1994); *Public Citizen v. United States Department of Justice,* 491 U.S. 440, 454–55, 109 S.Ct. 2558, 2566–67, 105 L.Ed.2d 377 (1989); *United States v. Thomas,* 77 F.3d 989, 991 (7th Cir.1996) (per curiam)—first to identify the prototype situation to which the statute is addressed. That need not be the most common case to which it is applied; the prototype may be effectively deterred because its legal status is clear. The second step is to determine how close to the prototype the case before the court is—how close, in other words, the family resemblance is between the prototypical case and the case at hand. Cf. *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993). The prototypical RICO case is one in which a person bent on criminal activity seizes control of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of legitimacy to perpetrate more, and less easily discovered, criminal acts than he could do in his own person, that is, without channeling his criminal activities through the enterprise that he has taken over. *United States v. Turkette,* 452 U.S. 576, 591, 101 S.Ct. 2524, 2532–33, 69 L.Ed.2d 246 (1981); *Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 457 (7th Cir.1982); *United States v. Carson,* 52 F.3d 1173, 1176–77 (2d Cir.1995).

A step away from the prototypical case is one in which the criminal uses the acquired enterprise to engage in some criminal activities but for the most part is content to allow it to continue to conduct its normal, lawful business—and many of the employees of the business may be unaware that it is controlled and being used by a criminal. E.g., *United States v. Robinson,* 8 F.3d 398, 407 (7th Cir.1993). In the next step beyond that, and now coming as close to this case as any case has yet done, the criminal seizes control of a subsidiary of a corporation and perverts the subsidiary into a criminal enterprise that manages in turn to wrest sufficient control or influence over the parent corporation to use it to commit criminal acts; and the issue is

whether the subsidiary can be deemed the RICO "person." Our decision in *Haroco* allowed the subsidiary to be deemed the RICO "person" conducting the affairs of its parent through a pattern of racketeering activity, without requiring, as in our hypothetical case, that the subsidiary participate in the *control* of the parent. See also *Cullen v. Margiotta,* 811 F.2d 698, 730 (2d Cir.1987). But that requirement was later imposed by the Supreme Court, *Reves v. Ernst & Young, supra,* 507 U.S. at 179, 113 S.Ct. at 1170, limiting *Haroco.*

What we cannot imagine, and what we do not find any support for in appellate case law, is applying RICO to a free-standing corporation such as Chrysler merely because Chrysler does business through agents, as virtually every manufacturer does. If Chrysler were even larger than it is and as a result had no agents, but only employees (it might own all its dealerships), it could not be made liable for warranty fraud under RICO. What possible difference, from the standpoint of preventing the type of abuse for which RICO was designed, can it make that Chrysler sells its products to the consumer through franchised dealers rather than through dealerships that it owns, or finances the purchases of its motor vehicles through trusts, or sells abroad through subsidiaries? We have never heard it suggested that RICO was intended to encourage vertical integration, yet that is the only effect that we can imagine flowing from a reversal of the district court's judgment.

In the prototypical case with which we began, it is easy to see how the defendant gains additional power to do evil by taking over a seemingly legitimate enterprise. How, though, was Chrysler empowered to perpetrate warranty fraud by selling through dealers rather than directly to the public? The warranty was issued by Chrysler, not by the dealers, and certainly not by the other members of the Chrysler "family." The dealers were merely a conduit, and the trusts and foreign subsidiaries were not even that. The dealers did not, by their incidental role in the alleged fraud (the other members of the "family," other than Chrysler itself, had no role), lend an air of legitimacy to a person

or entity that unless masked by a legitimate-seeming enterprise would be quickly discovered to be engaged in criminal acts. Chrysler has a *greater* appearance of probity than any automobile dealer. It has not established dealerships in order to fool car buyers into thinking that they are not dealing with the "racketeer" Chrysler, or to enable Chrysler to engage in fraud on a scale that would be impossible if it internalized the dealership function.

■ Maybe a manufacturer could use its dealers or other agents or affiliates in such a way as to bring about the sort of abuse at which RICO is aimed, in which event it might be possible to characterize the assemblage as a RICO enterprise. And we recognize the frequent asymmetry in the legal treatment of integrated and nonintegrated firms: under antitrust conspiracy law, for example, a firm can conspire with its dealers, but it cannot conspire with its subsidiaries or employees. *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). (Outside the antitrust area, the law on this issue is less clear. See *id.* at 775 n. 24, 104 S.Ct. at 2744 n. 24; *Johnson v. Hills & Dales General Hospital,* 40 F.3d 837, 839–41 (6th Cir.1994).) RICO, however, is not a conspiracy statute. Its draconian penalties are not triggered just by proving conspiracy. "Enterprise" connotes more. Just how much more is uncertain. But it is enough to decide this case that where a large, reputable manufacturer deals with its dealers and other agents in the ordinary way, so that their role in the manufacturer's illegal acts is entirely incidental, differing not at all from what it would be if these agents were the employees of a totally integrated enterprise, the manufacturer plus its dealers and other agents (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning of the statute.

AFFIRMED.