**Joseph WILLIAMS, on behalf of himself and others similarly situated, Plaintiff,**

v.

**FORD MOTOR COMPANY and Highland Park Ford, Inc., Defendants.**

**No. 97 C 162.**

United States District Court, N.D. Illinois, Eastern Division.

July 29, 1997.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Beth Ilyse Solomon, Edelman & Combs, Chicago, IL, for Plaintiff.

Alfred M. Swanson, Jr., Peter Francis Heraty, Jones, Ware & Grenard, Chicago, IL, Brian C. Anderson, Evelyn L. Becker, Jessica Davidson Miller, O'Melveny & Meyers, LLP., Washington, DC, for Defendant Ford Motor Co.

Stuart Berks, Michael Joseph Devine, Phillip Michael Schreiber, Deutsch, Levy & Engle, Chicago, IL, for Defendant Highland Park Ford, Inc.

### MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff Joseph Williams (Williams), on behalf of a putative class of individuals similarly situated, brought this action against defendants Ford Motor Company (Ford) and Highland Park Ford, Inc. (Highland) claiming violations of the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962(c), the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.,* and the Magnuson Moss Consumer Warranty Act, 15 U.S.C. § 2310. Specifically, plaintiff claims that (1) defendants fraudulently sold plaintiff an extended service plan in connection with the purchase of a used car without disclosing

the existence of an inspection fee, and (2) after plaintiff paid the inspection fee, defendant Ford breached the plan by failing to make the required payment. Jurisdiction is invoked pursuant to 18 U.S.C. § 1964, 28 U.S.C. § 1337, and 28 U.S.C. § 1367. Ford and Highland have filed separate motions to dismiss plaintiff's amended complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6). For the reasons stated below, Ford's motion to dismiss is granted in part and denied in part. Highland's motion to dismiss is granted.

## BACKGROUND

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, we accept all well pled factual allegations in the complaint as true and draw all reasonable inferences from these facts in favor of the plaintiff. *Travel All Over the World, Inc. v. The Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429 (7th Cir.1996). Read in this light, the facts are as follows.

Ford is a Delaware corporation that sells automobiles in Illinois. Highland is a corporation that operates a car dealership in Highland Park, Illinois. Ford, through formal agreements with automobile dealerships like Highland, also sells vehicle service plans to war purchasers. Pursuant to these agreements the dealers provide necessary repairs to consumers under the service plans and Ford reimburses the dealers' costs.

On June 17, 1994, plaintiff purchased a used 1990 Ford Festiva from Highland for a cash price of $4,800. Along with that vehicle, plaintiff paid an additional $1,195 for an extended service plan (ESP) that provided coverage for repairs incurred after the expiration of the manufacturer's basic limited warranty (in this case, after June 17, 1997, or 91,876 miles, whichever occurred first). The ESP covered the repair or replacement of 84 vehicle components at all participating Ford dealers in the United States and Canada. The only mention of costs beyond the initial purchase price of the ESP was the requirement of a $50 deductible per repair visit. The ESP stated that "All you pay is the deductible." It also stipulated that "[r]epairs will be paid up to the then current

N.A.D.A. wholesale value of the vehicle per repair visit" (Cplt.Exh.B.).

On approximately July 24, 1996, plaintiff's Festiva lost power and he took it to Highland for service. Highland informed him that Ford required the payment of an inspection fee of $612.95 before it would decide whether the problems causing the mechanical breakdown were covered by the ESP. Neither Highland nor Ford had disclosed the existence of an inspection fee prior to this date and no reference to an inspection fee was contained in the ESP. On July 31, 1996, plaintiff paid the inspection fee and Highland inspected the vehicle.

Highland found that the engine was defective and estimated the cost of repairs to be $6,000, which was in excess of the N.A.D.A. value of the vehicle ($1,575). Ford opted not to repair the vehicle and instead to pay plaintiff the N.A.D.A. value. Plaintiff repeatedly requested payment from both Highland and Ford, but has not yet received the amount owed to him under the ESP.

Plaintiff originally filed a class action complaint against Highland and Ford on January 9, 1997, that included five separate counts: (I) a RICO claim against Highland; (II) an Illinois Consumer Fraud Act claim against Highland and Ford; (III) a breach of service contract claim against Ford for the inspection fee; (IV) a separate breach of service contract against Ford for its failure to pay plaintiff the value of the car; and (V) a separate Consumer Fraud Act claim against Highland. On April 16, 1997, after both defendants filed separate motions to dismiss, plaintiff filed an amended complaint pursuant to Fed.R.Civ.P. 15 withdrawing the two Consumer Fraud Act claims against Highland (Counts II and V).

## DISCUSSION

### I. *Standard of Review*

■ A motion to dismiss tests the sufficiency of a complaint, not its merits. *Triad Ass'n Inc. v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). The allegations of a complaint should not be dismissed for failure to state a claim

"unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). In order to withstand a motion to dismiss a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir.1988). A complaint need not set out any legal theory; an incorrect legal theory is not fatal. *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992).

## II. *RICO Claim Against Highland*

Normally, when an owner takes in his automobile for repairs, the shop finds out what is wrong, repairs the vehicle, and bills the owner for the entire job. Perhaps the shop will first provide an estimate, for a price, then the owner decides whether or not he wants the repairs made, and, if the repairs are made, the estimate price becomes part of the total cost of repairs. After all, the shop has to find out what is wrong before it can proceed. With insurance coverage, that initial look is for an added reason. Perhaps the repairs are not covered and then the owner must foot the bill. Perhaps the inspection fee becomes part of the repair bill if the repairs are covered and the work is done, with the insurance reimbursing the owner. Perhaps the insurer also reimburses the owner if (1) the repairs are covered, (2) they would cost more than the value of the vehicle, and (3) the insurer elects to pay the value of the vehicle. And perhaps not. The allegations of the complaint indicate that plaintiff paid a substantial sum for a plan that promised that he would pay only the deductible for covered repairs, and that Ford would pay the rest of the cost of the repairs or the value of the vehicle. Further, the allegations indicate that the repairs were covered but he had to pay $612.95—a substantial portion of the value of the vehicle. Plaintiff is understandably distressed. But whether and to what extent he can recover in this lawsuit depends upon the claims advanced.

In Count I of the amended complaint plaintiff claims on behalf of the class that Highland violated § 1962(c) of the Racketeer Influenced and Corrupt Organization Act (RICO). That section provides as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity …

18 U.S.C. § 1962(c). "Racketeering activity" is defined by the statute as "any act which is indictable under any of the following provisions of title 18, United States Code: … section 1341 (relating to mail fraud) …" 18 U.S.C. § 1961(1). Section 1341, in turn, makes it unlawful for any person to use the mails for the purpose of executing a "scheme or artifice to defraud," 18 U.S.C. § 1341. Here, plaintiff alleges that defendants used the mails to engage in a scheme to defraud purchasers of Ford's extended purchase plan by failing to disclose at the time of sale the existence of an inspection fee.

■ To state a claim under § 1962(c) a RICO plaintiff must show the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Highland makes four arguments that plaintiff has not alleged facts sufficient to state a claim under this standard: (1) Ford is not a RICO "enterprise"; (2) Highland did not exercise the requisite operation or management of Ford's affairs to establish that it engaged in the conduct of a RICO enterprise; (3) Ford cannot be a RICO enterprise because it did not play a role in Highland's predicate acts; and (4) plaintiff has not alleged the predicate acts with the particularity required by Fed. R.Civ.P. 9(b). Because we find that the resolution of Highland's second argument is dispositive of plaintiff's RICO claim, we will focus on whether Highland participated in the conduct of the affairs of a RICO enterprise.

■ Liability under § 1962(c) attaches only to those persons associated with the enterprise who conduct or participate, "directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity." In *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court held that in order to be liable under § 1962(c), the defendant must have "participated in the operation or management of the enterprise itself," *Id.* at 193, 113 S.Ct. at 1177, and must have played *"some* part in directing the enterprise's affairs." *Id.* at 179, 113 S.Ct. at 1170 (emphasis in original). These stringent requirements have been interpreted by the Seventh Circuit as only applying to "outsider" defendants, like the accounting firm at issue in *Reves. MCM Partners v. Andrews–Bartlett & Assocs.,* 62 F.3d 967, 978–79 (7th Cir.1995). In contrast, where the defendant is alleged to be "lower-rung participant[ ] in the enterprise ... under the direction of upper management," the absence of any authority or power to control the conduct of the enterprise will not bar application of § 1962(c). *MCM Partners,* 62 F.3d at 978.

Here, plaintiff alleges that Ford "is an 'enterprise' as defined in 18 U.S.C. § 1961(4)" (Am.Cplt.¶ 33), and that Highland, as an independent automobile dealership which does not act under the direction of Ford's upper management, is a distinct RICO "person." Plaintiff argues that Highland, as an "outsider" to the RICO enterprise, was "associated with" Ford and liable under RICO by virtue of its participation in the conduct of Ford's affairs. Plaintiff's claim will stand only if he can show that Highland exercised the requisite influence over Ford's affairs; in other words, that it participated in the operation or management of the enterprise itself. *Reves,* 507 U.S. at 185, 113 S.Ct. at 1173. Specifically, for an "outsider" to be liable it must "exert control over" the enterprise through, for example, bribery. *Reves,* 507 U.S. at 184, 113 S.Ct. at 1172–73.

Plaintiff argues that "any 'person' who has *some* degree of direction over *some* portion of the activities of the 'enterprise' is subject to § 1642(c) liability" (Pl.Resp. at 5). Plaintiff asserts he has sufficiently alleged that Highland possessed such control over the activities of Ford with respect to the fraudulent scheme. In support of this assertion,

plaintiff basically argues that Highland's "agency" relationship with Ford conferred the degree of control over Ford's affairs necessary to give rise to RICO liability. Specifically, he states that Highland, pursuant to a formal agreement with Ford, sold Ford's ESPs, informed plaintiff and other consumers of the inspection fee, collected the inspection fee on behalf of Ford, and then performed the repairs covered by the plan. This, plaintiff claims, demonstrates that Highland exerted control over Ford's affairs with respect to the fulfillment of the service plans.

■ We find that plaintiff's allegations are inadequate. The fact that Highland was associated with Ford as a sales representative for Ford automobiles and ESPs does not invest it with the requisite degree of control to establish RICO liability. *Stone v. Kirk,* 8 F.3d 1079, 1092 (6th Cir.1993). Plaintiff rejoins that Highland is not merely Ford's representative for the sale of ESPs, it is also Ford's agent for the purpose of providing ESP-covered service and repairs. Based on this fact, plaintiff attempts to distinguish *Stone,* where the Sixth Circuit held that a record company's sales representative who solicited investors to lease the rights to master recordings "was not a participant in the operation or management of the [record company], and had no part in directing its affairs...." *Id.* at 1092. Plaintiff asserts that this case is qualitatively different since Highland not only represented Ford in the sale of the ESPs, but also exerted control over Ford by demanding inspection fees from covered owners and performing the required repair work.

However, the fact that Highland processed plaintiff's application, charged the inspection fee, and would have conducted the repair work on his vehicle if it had gone forward does not constitute the requisite "participation" in the affairs of Ford to warrant imposing RICO liability. *See Matter of Lake States Commodities, Inc.,* 936 F.Supp. 1461, 1476–77 (N.D.Ill.1996) (holding that a commodity salesman who assisted enterprise's owner in soliciting fraudulent investments did not direct the affairs of the RICO purposes and therefore could not be held liable

under § 1962(c)). At most, it shows that Highland carried out its ESP obligations pursuant to written agreements with Ford, indicating a relationship of control flowing from Ford to Highland, rather than the other way around. Furthermore, Highland's unilateral decision to charge plaintiff an inspection fee prior to assessing the extent of repair costs does not constitute "participation" in Ford's affairs. "[L]iability depends on showing that the defendants conducted or participated in the conduct of the *'enterprise's* affairs,' not just their *own* affairs." *Reves,* 507 U.S. at 185, 113 S.Ct. at 1173. Plaintiff has made no allegation that the inspection fee was imposed at the behest of anyone but Highland. This case is therefore like *Stone* and *Reves,* where the defendants were "outsiders" to the RICO enterprise and yet did not exert sufficient control over its affairs to give rise to RICO liability. Moreover, the cases plaintiff cites in support of its position are inapplicable since they deal with the liability of "insiders" to the RICO enterprise. *See MCM Partners,* 62 F.3d 967; *United States v. Oreto,* 37 F.3d 739 (1st Cir.1994), *cert. denied,* 513 U.S. 1177, 115 S.Ct. 1161, 130 L.Ed.2d 1116; *LaSalle Bank Lake View v. Seguban,* 937 F.Supp. 1309 (N.D.Ill.1996). Highland had no part in directing the affairs of Ford and therefore cannot be held liable under § 1962(c). Defendant Highland's motion to dismiss Count I is granted.

### III. *Unfair and Deceptive Acts and Practices Claim Against Ford*

In Count II of his complaint plaintiff alleges that Ford is liable to the class for Highland's failure to disclose that all claims under the ESP were subject to a substantial inspection fee. Although it is nowhere stated in his amended complaint, we assume that plaintiff brings this claim under the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.,* since that

is how the issue is framed in the response brief.[1]

The point of contention between the parties focuses on whether Highland's allegedly unfair and deceptive practices occurred in the course of selling the ESP or at the point when plaintiff requested repairs. The parties appear to agree that Ford cannot be held liable under a *respondeat superior* theory for the actions of Highland, as Ford's authorized dealer, connected to the *sale* of Ford's vehicles and products. *Washington v. Courtesy Motor Sales, Inc.,* 48 Ill.App.2d 380, 199 N.E.2d 263, 265 (1964); *see also Connick v. Suzuki Motor Co., Ltd.,* 174 Ill.2d 482, 221 Ill.Dec. 389, 397, 675 N.E.2d 584, 592 (1997) (stating that bare allegations of agency relationship between manufacturer and dealer with respect to sale of products is insufficient to plead agency). However, plaintiff contends that Highland must still be considered Ford's agent for "providing the service and repairs required under the plans" (Resp. at 15). Thus, plaintiff contends that because Highland was Ford's agent for the purpose of *making repairs* to automobiles covered by the ESPs, *see Ventura v. Ford Motor Corp.,* 180 N.J.Super. 45, 433 A.2d 801, 810–811 (Ct.App.Div.1981); *Koperski v. Husker Dodge, Inc.,* 208 Neb. 29, 302 N.W.2d 655, 665 (Neb.1981), Ford is thereby liable for Highland's misconduct in administering the ESPs.

Ford may well be correct that plaintiff's amended complaint, with its wording changes from the original complaint, does not sufficiently focus on Highland's insistence upon an inspection fee at the time it was asked to make repairs. But we are dealing with notice pleadings and the defect, if it be that, is curable by amendment. We see no good reason for delaying consideration of the underlying issue, but that issue has been deferred in the memoranda in light of the pleading arguments.

---

1. 815 ILCS 505/2 provides as follows:
   Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

The underlying issue is whether or not, under Illinois law, the conduct complained of is attributable to Ford. There appears to be no dispute that Highland decided to impose a fee; it was not directed to do so by Ford. Clearly, also, Highland is an independent contractor. That does not mean, however, that it cannot be Ford's agent for certain purposes. Indeed, invocation of the concept of agency is to some extent tautological. It is the statement of the conclusion that the law imposes derivative liability. *See Pinski v.. Adelman*, 955 F.Supp. 73 (N.D.Ill.1996); *Pinski v. Adelman*, No. 94 C 5783 1955 WL 669101 (N.D.Ill. Nov. 7, 1995). We think we need further briefing on this issue before we can resolve the motion to dismiss Count II. Ford is directed to file a brief confined to that issue by August 13, 1997, with plaintiff to respond by August 27, 1997, and Ford to reply by September 10, 1997.

## IV. *Breach of Service Contract Claims Against Ford*

In Count III plaintiff claims on behalf of the class that Ford breached the extended service plan and violated the Magnuson Moss Consumer Warranty Act, 15 U.S.C. § 2310, when its agent, Highland, demanded payment of the inspection fee. The Act permits consumers injured by "the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract" to bring suit in a federal district court. 15 U.S.C. § 2310(d)(1)(B). However, under § 2310(d)(3) of the Act:

No claim shall be cognizable in a suit brought under paragraph (1)(b) of this subsection—

  *   *   *   *   *   *

■ (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3). The 100 named-plaintiffs requirement "remains a substantial barrier to maintaining class actions under the Act. It was enacted by Congress to prevent 'trivial or insignificant' class actions from being brought in the federal courts." *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1114 n. 2 (7th Cir.), *cert. denied*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979).

Plaintiff's amended complaint does not identify 100 named plaintiffs, as required by § 2310(d)(3). Plaintiff argues that the 100 named-plaintiff requirement is inapplicable in this case because the Magnuson–Moss Act is not used as the sole basis for federal jurisdiction. However, this contention is unavailing for two reasons. First, since we have already dismissed plaintiff's RICO claim against Highland—the only other issue which would confer federal jurisdiction—plaintiff can no longer ask this court to take cognizance of his Magnuson–Moss claim under the supplemental jurisdiction provisions of 28 U.S.C. § 1367. Second, as noted in *Fitzgerald v. Chrysler Corp.*, No. 96–C–0021, 1996 WL 473456 (N.D.Ill. Aug.16, 1996) *aff'd*, 116 F.3d 225 (7th Cir.1997), to allow plaintiff's action to proceed would contravene both the plain language of the Act as well as "Congress's intent in passing such clear jurisdictional hurdles—namely, to screen out potentially trivial or minor class actions." 1996 WL 473456, at *8 n. 13. Therefore, we must dismiss Count III since it has been improperly brought as a class action under the Magnuson–Moss Act.

■ In Count IV plaintiff claims (this time speaking only on his own behalf) that Ford violated the Magnuson–Moss Act, 15 U.S.C. § 2310, by failing to pay plaintiff the N.A.D.A. value of the car in lieu of making the full $6,000 in repairs. Ford moves to dismiss this claim on the basis that plaintiff did not provide Ford a "reasonable opportunity to cure" its "failure to comply" with the service contract. 15 U.S.C. § 2310(e).

In his amended complaint plaintiff alleges that he "repeatedly requested payments" from Highland and Ford and that Ford has nevertheless failed to pay plaintiff the $1,575 (N.A.D.A. value of plaintiff's Ford Festiva) owed under the plan. At this early stage we find that plaintiff's broad allegation of Ford's failure to comply with requests for payment pursuant to the service contract is sufficient to state an individual claim under § 2310(d)(1) of the Magnuson–Moss Act.

## CONCLUSION

For the foregoing reasons, Highland's motion to dismiss Count I is granted. Ford's motion to dismiss Count III is granted, its motion to dismiss Count IV denied. Additionally, Ford's motion to dismiss Count II is denied pending additional briefing.