**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 25 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

WILMA L. BRANNON, on behalf of
themselves and all others similarly
situated; CHARLENE THOMAS, on
behalf of themselves and all others
similarly situated,

      Plaintiffs - Appellants,

v.

BOATMEN'S FIRST NATIONAL
BANK OF OKLAHOMA; T.B.A. OF
OKLAHOMA INC.; BOATMEN'S
BANCSHARES INC.,

      Defendants - Appellees.

No. 97-6052

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 96-CV-1125)**

---

Adam B. Goodman, Edelman & Combs (Daniel A. Edelman, Cathleen M. Combs,
James O. Latturner, and Beth I. Solomon, Edelman & Combs, and Tomme J. Fent,
Community Legal Services of Oklahoma City, P.C., Oklahoma City, Oklahoma,
with him on the brief), Chicago, Illinois, for Plaintiffs - Appellants.

Joe E. Edwards (Ricki V. Sonders and Susan Moebius Henderson with him on the
brief), Day, Edwards, Federman, Propester & Christensen, P.C., Oklahoma City,
Oklahoma, for Defendants - Appellees.

---

Before **BRORBY**, **BARRETT** and **LUCERO**, Circuit Judges.

**LUCERO** , Circuit Judge.

This appeal arises from the district court's 12(b)(6) dismissal of a civil action pursuant to the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, brought by plaintiffs Wilma Brannon and Charlene Thomas against Boatmen's Bancshares, Inc. ("Bancshares"), a bank holding company, and its subsidiary, Boatmen's First National Bank of Oklahoma ("Boatmen's").  We are asked to address whether a parent-subsidiary corporate relationship standing alone is enough to invoke RICO liability.  Holding that it is not, we affirm.

## I

Plaintiffs obtained financing for the purchase of used automobiles by means of standard form retail installment sales contracts assigned to defendant Boatmen's.  The terms of the contracts require the borrower to maintain adequate insurance on the collateral and provide that if the borrower fails to maintain such coverage, the lending institution is authorized to procure the insurance itself and add these costs to the balance of the borrower's account, a procedure known as "force placed" insurance.

According to plaintiffs' complaint, Boatmen's obtained "force placed" insurance for their automobiles.  Plaintiffs allege that, in such transactions, it was

-2-

Boatmen's practice to charge consumers more than the actual cost of the insurance, to procure insurance not authorized by the sales contracts or that exceeded the contracts' terms, and not to disclose to consumers their altered obligations and misrepresent their rights under the sales contracts. Seeking relief, plaintiffs filed suit in federal court alleging a violation of RICO, 18 U.S.C. § 1962(c), and various pendent state law claims. The district court granted defendants' motion to dismiss for failure to state a claim. [1] Plaintiffs appeal the order of dismissal and contend that the district court abused its discretion by refusing to grant them leave to amend their complaint.

## II

Section 1962(c) of RICO provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. § 1962(c). Count I of plaintiffs' complaint alleges that Boatmen's is the RICO person and Bancshares the RICO enterprise. Count II asserts a roughly inverse relationship, with Bancshares in the role of the person and "the corporate group headed by Bancshares" and "Boatmen's and the other subsidiaries of

---

[1] The district court dismissed plaintiffs' RICO claims with prejudice. The remaining claims against Bancshares, Boatmen's and T.B.A. of Oklahoma, Inc., brought pursuant to Oklahoma state law, were dismissed without prejudice.

Bancshares that purchase retail installment contracts" as the alleged RICO enterprises. Appellants' Br. at 10. [2] The district court concluded that plaintiffs failed to sufficiently plead the existence of an enterprise distinct from the RICO person and dismissed both counts for failure to state a claim upon which relief could be granted. We review de novo the district court's dismissal. See Chemical Weapons Working Group, Inc. v. United States Dep't of the Army, 111 F.3d 1485, 1490 (10th Cir. 1997).

## A. Count I

It is well-settled in this circuit, as in most others, that for purposes of 18 U.S.C. § 1962(c), the defendant "person" must be an entity distinct from the alleged "enterprise." See Board of County Comm'rs v. Liberty Group, 965 F.2d 879, 885 & n.4 (10th Cir. 1992) (citing cases); see also David B. Smith & Terrance G. Reed, Civil RICO ¶ 3.07, at 3-77 to 3-78 & nn.2 & 3 (1998). But see United States v. Hartley, 678 F.2d 961, 987-990 (11th Cir. 1982) (holding person and enterprise need not be different entities). This interpretation flows from the statute's mandate that the person who engages in the pattern of racketeering activity be "employed by or associated with" the enterprise. 18 U.S.C. § 1962(c); see Yellow Bus Lines, Inc. v. Local Union 639, 883 F.2d 132, 139 (D.C. Cir.

---

[2] Plaintiffs named several other enterprises in Counts I and II. They do not appeal the district court's determination with respect to those alleged enterprises. See Appellants' Br. at 9 n.2, 10 n.3.

-4-

1989) ("Logic alone dictates that one entity may not serve as the enterprise and the person associated with it because . . . 'you cannot associate with yourself.'") (quoting McCullough v. Suter, 757 F.2d 142, 144 (7th Cir. 1985)). The district court concluded that plaintiffs' allegation that Boatmen's conducted or participated in the conduct of its parent's affairs is insufficient to satisfy this requirement. We agree.

The Supreme Court has held that liability under § 1962(c) "depends on showing that the defendant[] conduct[s] or participat[es] in the conduct of the 'enterprise's affairs,' not just [its] own affairs." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993). As to Count I, plaintiffs submit that Boatmen's actions constitute conduct or participation in the conduct of Bancshares' affairs. In support of this proposition, they call our attention to the Seventh Circuit's decision in Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago, 747 F.2d 384 (7th Cir. 1984), aff'd on other grounds, 473 U.S. 606 (1985). The Haroco appellants argued that their § 1962(c) claim was properly pleaded by alleging first, that the defendant corporation was both the person and the enterprise, and second, that the defendant conducted the affairs of its parent corporation. See id. at 399, 402. The Seventh Circuit rejected this first contention, holding that, for purposes of § 1962(c), the person and the enterprise must be distinct entities. See id. at 401-02; accord Liberty Group, 965 F.2d at

885 & n.4. The Haroco court agreed, however, with the plaintiffs' second proposition, concluding that it was "virtually self-evident that a subsidiary acts on behalf of, and thus conducts the affairs of, its parent corporation." 747 F.2d at 402-03.

As an initial matter, we are concerned that the broad rule enunciated by the Haroco court would allow the application of RICO in every fraud case against a corporation. A parent corporation, as a matter of corporate reality, is nothing more than the controlling shareholder of a subsidiary. The implied holding in Haroco is therefore that, because a corporation acts on behalf of its controlling shareholders, a § 1962(c) claim naming a corporation as the "person" and its shareholders, whether individuals or legal entities, as the "enterprise" is properly pleaded. Dramatically expanding RICO liability because of a business organization choice makes little sense from a policy perspective. See In re Tucker Freight Lines, Inc., 789 F. Supp. 884, 893 (W.D. Mich. 1991) ("If a corporation is not liable for conduct on the day before another corporation buys it, no RICO policy indicates that it should be liable on the day after."); cf. Discon, Inc. v. Nynex Corp., 93 F.3d 1055, 1064 (2d Cir. 1996) ("It would be inconsistent for a RICO person . . . to be subject to liability simply because it is separately

incorporated, whereas otherwise it would not be held liable . . . .") (rejecting

Haroco ), cert. granted , 118 S. Ct. 1298 (1998).  [3]

Moreover, Haroco 's precedential value has been limited by the Seventh

Circuit's recent decision in Emery v. American Gen. Fin., Inc. , 134 F.3d 1321

(7th Cir. 1997). The plaintiffs in Emery charged that the defendant corporation

conducted the affairs of an enterprise consisting of, among others, its parent

corporation. See id. at 1324. Holding that plaintiffs had failed to state a claim,

the Emery court commented:

> The plaintiff's lawyer continues . . . to believe that the requirement
> in a case such as this of proof that defendants conducted the affairs
> of an enterprise through a pattern of racketeering activity, 18 U.S.C.
> § 1962(c), is satisfied merely by showing that the pattern of predicate
> acts . . . were committed by a firm that has agents or affiliates. That
> is not enough. The firm must be shown to use its agents or affiliates
> in a way that bears at least a family resemblance to the paradigmatic
> RICO case in which a criminal obtains control of a legitimate (or

---

[3] A number of courts facing similar issues have also rejected this aspect of Haroco . See NCNB Nat'l Bank of North Carolina v. Tiller , 814 F.2d 931, 936 (4th Cir. 1987) (holding that, as a matter of law, defendant bank is not distinct from its holding company, the alleged enterprise, for purposes of § 1962(c)), overruled on other grounds by Busby v. Crown Supply, Inc. , 896 F.2d 833 (4th Cir. 1990); Atkinson v. Anadarko Bank & Trust Co. , 808 F.2d 438, 441 (5th Cir. 1987) (affirming judgment notwithstanding the verdict because no evidence that defendant bank was distinct from its holding company, the enterprise); Nebraska Sec. Bank v. Dain Bosworth Inc. , 838 F. Supp. 1362, 1369 (D. Neb. 1993) (rejecting the reasoning in Haroco and holding that neither parent nor its wholly owned subsidiary can constitute a § 1962(c) enterprise if the other is named the defendant person); Tucker Freight Lines, Inc. , 789 F. Supp. at 893 (rejecting Haroco and granting motion to dismiss because defendant corporation was not distinct from parent, the alleged enterprise).

legitimate-appearing) firm and uses the firm as the instrument of his criminality.

Id. at 1323-24. Thus, after Emery, in order to state a viable claim under § 1962(c) against a corporation for conducting the affairs of its parent corporation, a plaintiff must, at the very least, allege the parent "somehow made it easier to commit or conceal the fraud of which the plaintiff complains." Id. at 1324. We therefore decline plaintiffs' invitation to adopt a rule in this circuit that a mere allegation that the RICO "person" is the subsidiary conducting the affairs of the parent is sufficient to state a claim under § 1962(c). [4]

As the Supreme Court has held, plaintiffs must allege that the "defendant[] conduct[s] or participat[es] in the conduct of the 'enterprise's affairs,' not just [its] own affairs." Reves, 507 U.S. at 185 (emphasis added). The Seventh Circuit

_____

[4] Plaintiffs also contend that the result they seek is compelled by the Third Circuit's decision in Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258 (3d Cir. 1995). In so doing, they misconstrue that opinion. Jaguar Cars holds only that "corporate officers/employees . . . may properly be held liable as persons managing the affairs of their corporation as an enterprise through a pattern of racketeering activity." Id. at 261. We note that this conclusion has long been the rule in this circuit. See Liberty Group, 965 F.2d at 886 (noting that employee of partnership may be liable under § 1962(c) for conducting the affairs of the partnership). Plaintiffs contend that the relationship between a subsidiary and its parent is analogous to that between officers/employees and a corporation. The analogy fails, however, for the simple reason that corporations can act only through their employees and agents. See Metcalf v. PaineWebber Inc., 886 F. Supp. 503, 514 n.12 (W.D. Pa. 1995) (concluding that the holding in Jaguar Cars cannot be extended to corporate defendants), aff'd mem., 79 F.3d 1138 (3d Cir. 1996).

amplified this language in Emery, 134 F.3d at 1324, and Fitzgerald v. Chrysler Corp., 116 F.3d 225, 227 (7th Cir. 1997), which hold that, at a bare minimum, an allegation of RICO liability under 1962(c) must indicate how the defendant used the alleged enterprise to facilitate the fraudulent conduct. In Fitzgerald, the plaintiffs filed a § 1962(c) claim against Chrysler, alleging that it engaged in warranty fraud through enterprises consisting of its subsidiaries and dealers. The court contrasted the facts before it with,

> [t]he prototypical RICO case . . . in which a person bent on criminal activity seizes control of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of legitimacy to perpetrate more, and less easily discovered, criminal acts than he could do in his own person, that is, without channeling his criminal activities through the enterprise that he has taken over.

Fitzgerald, 116 F.3d at 227. Because plaintiffs failed to allege how Chrysler was "empowered to perpetrate warranty fraud" through the alleged enterprises, the court affirmed the dismissal for failure to state a claim. Id.

Likewise, in Emery, the court rejected the proposition that a corporation can be said to conduct the affairs of a RICO enterprise merely because it is a firm with agents or affiliates. See 134 F.3d at 1324. Once again distinguishing between the facts in issue and the prototypical RICO case, the court held that the defendant corporation must be shown to use the alleged enterprise "as the instrument of [its] criminality," and the plaintiff must plead that the alleged

-9-

enterprise "somehow made it easier to commit or conceal the fraud of which the plaintiff complains." Id.

Turning to the complaint before us, Count I properly alleges that Boatmen's engaged in mail fraud, which is encompassed by RICO's broad definition of "racketeering activity." See 18 U.S.C. § 1961(1)(B). According to the complaint, the alleged mail fraud was conducted entirely by Boatmen's, the defendant person. With respect to Bancshares, the alleged enterprise, plaintiffs assert only that (1) "Bancshares delegated responsibility for the organization and servicing of the consumer credit obligations at issue in this case to Boatmen's," (2) "[a]ll revenue and profits derived by Boatmen's from the conduct complained of in this case inured to the benefit of Bancshares and is reflected on the financial statements issued by Bancshares to the public for the purpose of raising capital," and (3) "the capital Bancshares obtained from the public was used to create and fund the operations of its subsidiaries, including Boatmen's." Appellants' App. at 4 (Complaint, ¶¶ 12-14). These allegations do nothing more than define a legitimate corporate and financial relationship between Boatmen's and its holding company.

It is irrelevant to plaintiffs' RICO claim against Boatmen's that the responsibility for organizing and servicing consumer credit obligations was delegated to it by Bancshares. This allegation does not show that the subsidiary

was engaged in the conduct of its parent's affairs; to the contrary, it suggests that the handling of consumer credit obligations was *Boatmen's* affair. Moreover, plaintiffs' allegations that Boatmen's revenue and profits benefitted Bancshares establish nothing more than that the bank holding company benefitted financially from the success of its subsidiary—a fact that on its own is unrelated to RICO liability.

Thus, the complaint alleges no activity on the part of Bancshares that might reasonably be understood to implicate it in the scheme attributed to Boatmen's. In this sense, the case before us is similar to Richmond v. Nationwide Cassel L.P., 52 F.3d 640 (7th Cir. 1995). In Richmond, "[n]ot one of the non-defendant entities, supposedly constituent parts of the 'enterprise,' is described as playing a role in the force placed insurance that allegedly was foisted on the used car purchaser-victim." Id. at 645. The court concluded that because the complaint "alleges only that the defendants perpetrating the fraud on [plaintiff] were conducting their own . . . affairs," it failed to allege adequately an enterprise. Id. at 645-46; see also Liberty Group, 965 F.2d at 885 ("[A] separate enterprise is not demonstrated by the mere showing that the corporation committed a pattern of predicate acts in the conduct of its own business."); cf. Atkinson v. Anadato Bank & Trust Co., 808 F.2d 438, 441 (5th Cir. 1987) (judgment notwithstanding the verdict proper when evidence presented was that mail fraud was conducted by

defendant bank and no evidence was presented of activity by alleged enterprise).

We do not exclude the possibility that, as the Emery court recognized, there are situations where a subsidiary and parent relationship, properly alleged, could state a claim for § 1962(c) liability. See 134 F.3d at 1324. It is insufficient, however, merely to assert that a defendant corporation accused of racketeering is a subsidiary and therefore automatically conducts the affairs of its parent. Nothing in plaintiffs' allegations indicates how the relationship between Boatmen's and its holding company allowed the defendant bank to perpetrate or conceal the alleged mail fraud. We therefore agree with the district court that the action against Boatmen's failed to state a claim.

**B. Count II**

As for plaintiffs' claim against Bancshares, defendants contend that it is insufficient to allege merely that the RICO person is a parent corporation conducting the affairs of alleged enterprises that are also its subsidiaries or affiliates. There is substantial case law supporting this proposition. See, e.g., Emery, 134 F.3d at 1324 (holding that no goal or policy of RICO satisfied by imposing liability on parent when "[t]here is no allegation that by using subsidiaries rather than divisions the [enterprise] somehow made it easier to commit or conceal the fraud"); Khurana v. Innovative Health Care Sys., Inc., 130 F.3d 143, 155 (5th Cir. 1997) (affirming dismissal of § 1962(c) claims against

hospital and parent corporation on grounds that enterprise pleaded "is in reality a 'stand-in,' or another name, for the corporate entity"); Fitzgerald , 116 F.3d at 228 ("[W]here a [corporation] deals with its dealers and other agents in the ordinary way, so that their role in the manufacturer's illegal acts is entirely incidental, differing not at all from what it would be if these agents were . . . employees . . ., the [corporation] . . . (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning of the statute."); Discon , 93 F.3d at 1064 (holding that three corporate defendants operating "within a unified corporate structure" and "guided by a single corporate consciousness" could not together constitute the enterprise); Compagnie de Reassurance d'Ile de France v. New England Reinsurance Corp. , 57 F.3d 56, 92 (1st Cir. 1995) (affirming dismissal of RICO claim when subsidiary, the alleged enterprise, took no actions independent of its defendant parent); Lorenz v. CSX Corp. , 1 F.3d 1406, 1412 (3d Cir. 1993) (RICO claim against parent not stated when subsidiary, the alleged enterprise, "merely acts on behalf of, or to the benefit of, its parent"); NCNB Nat'l Bank of North Carolina v. Tiller , 814 F.2d 931, 936 (4th Cir. 1987) ("[A] 'person' is not distinct from an 'enterprise' when a corporation and its wholly owned subsidiary are involved."), overruled on other grounds by Busby v. Crown Supply, Inc. , 896 F.2d 833 (4th Cir. 1990). In light of this compelling precedent,

-13-

we doubt plaintiff has properly alleged a RICO enterprise distinct from Bancshares.

Plaintiffs' claim fails, however, for a more fundamental reason. As the Supreme Court has stated, "[a] violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co. , 473 U.S. 479, 496 (1985) (footnote omitted). Each of these elements must be alleged in order to state a claim. See id. In this case, plaintiffs have simply failed to allege that Bancshares engaged in a "pattern of racketeering activity." [5] Although the complaint submits that Bancshares delegated responsibility for "servicing of the consumer credit obligations at issue in this case to Boatmen's," Appellant's App. at 4 (Complaint, ¶ 12), it alleges only that *Boatmen's* carried out the practices of which plaintiffs complain, see id. at 10-11 (Complaint, ¶¶ 43-48). Nowhere in the complaint is *Bancshares* alleged to have engaged in conduct constituting mail fraud. As such, the complaint fails to allege an actionable violation of § 1962(c) against Bancshares, and was therefore properly dismissed by the district court.

**III**

---

[5] Under § 1961(5) a "pattern of racketeering activity" requires "at least two acts of racketeering activity." 18 U.S.C. § 1961(5); see also Sedima, 473 U.S. at 496 n.14 (discussing definition of "pattern of racketeering activity").

Plaintiffs' final claim on appeal is that the district court abused its discretion by refusing to permit them to amend their complaint. We have diligently explored the record and have not found any motions pursuant to Fed. R. Civ. P. 15(a) filed by the plaintiffs prior to entry of judgment. Our search for a motion by plaintiffs to amend the judgment pursuant to Fed. R. Civ. P. 59(e), or to have it vacated pursuant to Fed. R. Civ. P. 60(b), was equally unavailing. See Seymour v. Thornton, 79 F.3d 980, 987 (10th Cir. 1996) ("[O]nce judgment is entered, the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b).") (quoting Cooper v. Shumway, 780 F.2d 27, 29 (10th Cir. 1985)); Glenn v. First Nat'l Bank in Grand Junction, 868 F.2d 368, 370 (10th Cir. 1989) (holding in RICO case that district court is not required sua sponte to allow plaintiffs to amend complaint); see also 6 Charles Alan Wright et al., Federal Practice and Procedure § 1489 (2d ed. 1990). Plaintiffs ask us to conclude that the district court abused its discretion notwithstanding their own apparent failure to invoke that discretion in the first place. We will not satisfy this request.

## IV

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.