**F I L E D**

UNITED STATES COURT OF APPEALS

**APR 10 2000**

FOR THE TENTH CIRCUIT

DIRT HOGS INC., an Oklahoma
Corporation,

      Plaintiff-Appellant,

v.

NATURAL GAS PIPELINE
COMPANY OF AMERICA;
CURTIS ANDERSON; TONY CARR;
MIKE TUBBS,

      Defendant-Appellee,

   and

ARNOLD JOE ALFORD, doing
business as S&J Construction,

      Defendant.

No. 99-6026
(D.C. No. 98-CV-231-R)
(W.D. Okla.)

ORDER AND JUDGMENT *

Before **EBEL**, **LUCERO**, and **MURPHY**, Circuit Judges.

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Dirt Hogs, Inc. appeals the district court's dismissal of its claims brought pursuant to the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), 18 U.S.C. §§ 1961-68, together with its state law claims.[1] We affirm.

Plaintiff is a construction company that performed reclamation and earth moving work for defendant Natural Gas Pipeline Co. (Natural) in Kansas, Texas, and Oklahoma. Plaintiff contends it was promised substantial reclamation work by Natural, but that the work was withheld after plaintiff refused to comply with schemes involving mail fraud and extortion. Specifically, plaintiff's third amended complaint alleged that defendant Natural, together with its employees and an employee of Dirt Hogs (Mills), committed the following acts: (1) enticed plaintiff into buying additional equipment by promising that a large amount of reclamation work was available for plaintiff, without disclosing that plaintiff would still be required to bid for this work; (2) in the fall of 1996, Natural's inspector in Kansas, defendant Anderson, together with plaintiff's employee Mills, pressured plaintiff for a horse and barn for Anderson's daughter, and when plaintiff refused, they required plaintiff to deliver sheets of metal to the

---

[1]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

work site which were then converted to Anderson's own use; (3) to reduce reclamation costs, defendant Carr, Natural's inspector in Texas, together with Mills, altered or required plaintiff to alter its invoices to undercharge for work and equipment; and (4) starting on April 10, 1997, defendants Carr and Mills began pressuring plaintiff for kickbacks, telling plaintiff that this was a standard practice in Natural's operation, requesting first a big screen television or $1,500 in cash, then a lawnmower, alcoholic beverages, construction of a fence for Carr's dog pen, and a rototiller. In addition, plaintiff alleged that it submitted a superior bid for the Kansas contract but the work was awarded to its competitor, defendant S&J Construction, because S&J gave bribes to Natural employees.

The district court dismissed the RICO claims in plaintiff's third amended complaint for failure to state a claim. The court held that plaintiff's mail fraud claim failed because there was not a sufficient pattern of racketeering, and that its extortion claim failed because the complaint did not show the existence of a RICO enterprise. The court declined to exercise supplemental jurisdiction over plaintiff's state law claims and dismissed the action.

On appeal, plaintiff argues that the district court erred in dismissing the complaint because the mail fraud and extortion predicate acts should have been considered together to establish a pattern of racketeering, and because plaintiff adequately described the structure of and participants in the RICO enterprise.

We review the district court's dismissal for failure to state a claim de novo. <u>See</u> <u>Brannon v. Boatmen's First Nat'l Bank</u>, 153 F.3d 1144, 1146 (10th Cir. 1998).

The first issue can be resolved quickly. We need not examine whether the complaint alleged a continuous pattern of mail fraud when considered together with the extortion claims, because the facts as alleged by plaintiff simply do not constitute mail fraud. Plaintiff's claim rests on the allegation that it was required to submit false invoices understating the amount of work it performed and the equipment used. Mail fraud is not committed, however, simply by sending false statements through the mail. Instead, the mails must have been used to further a scheme to defraud or obtain money or property through false pretenses. <u>See</u> <u>BancOklahoma Mortgage Corp. v. Capital Title Co.</u>, 194 F.3d 1089, 1102 (10th Cir. 1999).

This requirement was not satisfied here. The reduced billing was not intended to defraud Natural, who allegedly knew that the invoices undercharged for the work performed and the equipment used. Nor were the invoices mailed to deceive plaintiff, who also knew that the information contained therein was inaccurate. <u>See</u> <u>id.</u> at 1103 (setting out elements of fraud, including lack of knowledge of truth by recipient of false statement, and right to rely on false statement); <u>United States v. Reddeck</u>, 22 F.3d 1504, 1507 (10th Cir. 1994)

("A scheme to defraud is conduct that is intended to or is reasonably calculated to deceive ordinary people.") (quotations omitted).

As for the extortion claim, plaintiff has not shown that the third amended complaint adequately described an "enterprise" with a distinct existence and structure, as required by RICO. Section 1962(c) provides:

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). An enterprise may be either a legal entity or a "group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To plead the existence of such an enterprise, the complaint must show (1) "an ongoing organization with a decision-making framework or mechanism for controlling the group;" (2) with associates that "function as a continuing unit;" and (3) which is "separate and apart from the pattern of racketeering activity." United States v. Sanders, 928 F.2d 940, 943-44 (10th Cir. 1991) (applying criteria identified in United States v. Riccobene, 709 F.2d 214, 223-24 (3d Cir. 1983)). "A RICO enterprise is an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." United States v. Rogers, 89 F.3d 1326, 1337 (7th Cir. 1996) (citation and internal quotations omitted).

Despite being given numerous opportunities to amend, plaintiff's eighty-nine page complaint and RICO statement do not clearly identify an ongoing enterprise, with an existence and a decision-making structure separate from its corporate participant. In general, plaintiff alleges that the "enterprise" was an association among Natural, its high-level management, certain corporate employees, S&J Construction, plaintiff's employees, and other unidentified participants. See Appellant's App. at 35 (alleging enterprise consisted of "Natural, Pike, Pikula, Alford d/b/a S&J, Mills, Carr, Tubbs, Anderson, and other persons unknown"); at 37 ("The participants in the enterprise are officers, employees, independent contractors and their employees (the specific actors vary from time to time) of the corporation Natural Gas Pipelines of America, S&J Construction, and Dirt Hogs Construction, Inc."); at 39 ("in addition to the named participants of the enterprise . . . there do exist other known and unknown participants"); at 46 ("Defendant Natural, through its agents and co-conspirators engaged in a series of distinct and separate criminal enterprises, associated with, controlled and maintained both directly and indirectly the criminal conspiracies and engaged in interstate commerce . . . ."); at 64 ("Natural, Pike, Pikula, Tubbs, Carr, and Mills did conspire and associate with one another in an interstate enterprise to violate RICO . . . ."); at 87 (identifying participants in extortion enterprise as Natural, Pike, Pikula, Anderson, Mills, Carr, and Alford).

-6-

Such inconsistent and conclusory allegations employ a "moving target" approach to describing an enterprise, by naming a string of participants, known and unknown, and alleging that they acted as an association in fact. Considering the centrality of the enterprise to a RICO claim, "a nebulous, open-ended description of the enterprise does not sufficiently identify this essential element." Richmond v. Nationwide Cassel L.P., 52 F.3d 640, 645 (7th Cir. 1995).

Further, the only decision-making structure described by plaintiff is the inherently hierarchical relationship between Natural, its employees, and agents. See Appellant's App. at 85-88; Appellant's Br. at 20-25; and Appellant's Reply Br. at 10. Similarly, the enterprise's purpose--making it appear that Natural was complying with the reclamation laws, keeping its costs down, and maintaining its liquidity for a future sale--furthered primarily the corporation's interests. See id. at 7-8. Because the complaint failed to describe an enterprise with a separate structure or purpose, the district court was correct in holding it did not satisfy the RICO pleading requirements.

Plaintiff's complaint suffers from a second defect as well. Because the "enterprise" identified by plaintiff appears to be nothing more than another name for Natural and its agents, conducting the corporation's business, the complaint fails to describe an enterprise distinct from the defendant corporation. We have held that § 1962(c) requires a showing that a RICO "enterprise" is distinct from

the "person" who conducts the enterprise's affairs through a pattern of racketeering. See Brannon, 153 F.3d at 1146. Although here plaintiff alleged that the enterprise was comprised of parties unrelated to Natural, the complaint ascribed active roles only to Natural and its agents, with Dirt Hogs and S&J participating simply as victims. [2] Under these circumstances, courts have pierced through the allegations in a complaint to hold that the alleged enterprise is not distinct from its defendant participants. See, e.g., Richmond, 52 F.3d at 647 (affirming dismissal when alleged enterprise consisted of related legal entities and unnamed car dealers for lack of distinctiveness between defendants and the only active participants in the enterprise); see also Board of County Comm'rs v. Liberty Group, 965 F.2d 879, 885-86 (10th Cir. 1992) (piercing through allegation of association in fact between entities and individuals to show that all actions were taken by the defendant partnership, "going about its ordinary business"

---

[2] We question whether a racketeering victim can be part of the enterprise through which the racketeering is conducted. See National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994) ("[T]he 'enterprise' in [§ 1962(c)] connotes generally the vehicle through which the unlawful pattern of racketeering is committed, rather than the victim of that activity."); Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 267 (3d Cir. 1995) (holding "a victim corporation . . . could not reasonably be viewed as the enterprise through which employee persons carried out their racketeering activity. Rather, in such an instance, the proper enterprise would be the association of employees who are victimizing the corporation, while the victim corporation would not be the enterprise, but instead the § 1962(c) claimant.").

through its employees and agents, and therefore the enterprise was not distinct from the partnership).

As explained by the Second Circuit in Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994), the distinctiveness requirement may not be avoided

> by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendants . . . . [W]here employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.

Because the complaint did not allege an enterprise separate and distinct from Natural, the district court properly dismissed the extortion-based RICO claim. In addition, because plaintiff did not state mail fraud or extortion claims under § 1962(c), the district court correctly dismissed the § 1962(d) conspiracy claims as well. See Torwest DBC, Inc. v. Dick, 810 F.2d 925, 927 n.2 (10th Cir. 1987) (noting that resolution of substantive § 1962(c) claim also disposed of conspiracy claim).

The judgment is AFFIRMED.

Entered for the Court

Carlos F. Lucero
Circuit Judge

-9-