16-533-cv
U1IT4Less Inc. v. FedEx Corp., et al.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2016

(Argued: March 7, 2017        Decided: September 18, 2017)

Docket No. 16-533-cv

_____

U1IT4LESS, INC., d/b/a NYBIKERGEAR,

*Plaintiff-Appellant*,

v.

FEDEX CORPORATION, FEDEX CORPORATE SERVICES, INC., FEDEX
GROUND PACKAGE SYSTEM, INC.,

*Defendants-Appellees.*

_____

Before:

SACK and LOHIER, *Circuit Judges*, and WOODS, *District Judge*.[*]

U1IT4Less, Inc., d/b/a NYBikerGear ("BikerGear"), appeals from a judgment dismissing its claims against FedEx Corporation, FedEx Corporate Services, Inc., and FedEx Ground Package System, Inc. (collectively, "FedEx"). BikerGear accused FedEx of fraudulently marking up the weights of packages shipped by BikerGear and wrongly charging BikerGear for Canadian customs. As relevant to this appeal, the United States District Court for the Southern

---

[*] Judge Gregory H. Woods, of the United States District Court for the Southern District of New York, sitting by designation.

District of New York (Seibel, *J.*) initially dismissed BikerGear's claim under 49 U.S.C. § 13708(b) for failure to state a claim. Following discovery, the District Court (Forrest, *J.*) granted summary judgment dismissing BikerGear's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") on the ground that BikerGear had failed to satisfy RICO's "distinctness" requirement. We **AFFIRM**. Judge WOODS concurs in a separate opinion.

JAY L.T. BREAKSTONE (Amanda C. Broadwell, Jessica L. Richman, *on the brief*), Parker Waichman LLP, Port Washington, NY, *for Plaintiff-Appellant*.

AARON T. CASSAT, Federal Express Corporation, Memphis, TN, *for Defendants-Appellees FedEx Corporation & FedEx Corporate Services, Inc.*

Benjamin J. Ferron & Jason W. Norris, FedEx Ground Package System, Inc., Moon Township, PA, *for Defendant-Appellee FedEx Ground Package System, Inc.*

LOHIER, *Circuit Judge*:

U1IT4Less, Inc., d/b/a NYBikerGear ("BikerGear"), an internet retailer of motorcycle gear, accuses FedEx Corporation and its subsidiaries FedEx Corporate Services, Inc. and FedEx Ground Package System, Inc.[1] of fraudulently marking up the weights of packages shipped by BikerGear and overcharging

---

[1] In this opinion we refer to FedEx Corporation as "FedEx Corp.," FedEx Corporate Services, Inc. as "FedEx Services," and FedEx Ground Package System, Inc. as "FedEx Ground." We refer collectively to the three companies as "FedEx."

2

BikerGear for Canadian customs. In doing so, BikerGear claims, FedEx violated the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. § 13708(b), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). As relevant to this appeal, the United States District Court for the Southern District of New York (Seibel, J.) dismissed the ICCTA claim on the pleadings because, it concluded, the ICCTA is not "directed at" the type of billing dispute at issue in this case. U1IT4Less, Inc. v. FedEx Corp., 896 F. Supp. 2d 275, 294 (S.D.N.Y. 2012). Following discovery, the District Court (Forrest, J.) granted FedEx's summary judgment motion and dismissed BikerGear's substantive RICO claims because BikerGear failed to adduce evidence that FedEx Corp. and FedEx Services, the alleged RICO "persons," are distinct from FedEx Ground, the alleged RICO "enterprise." We **AFFIRM**.[2]

## BACKGROUND

FedEx Corp. is the public holding company for all of FedEx's wholly-owned operating subsidiaries. FedEx Ground is FedEx's ground delivery service

---

[2] The District Court also granted summary judgment to FedEx on BikerGear's class action RICO claims because the shipping contracts contained class action waivers. U1IT4Less, Inc. v. FedEx Corp., No. 11-cv-1713 (KBF), 2015 WL 3916247 (S.D.N.Y. June 25, 2015). As we affirm the dismissal of BikerGear's individual RICO claims, we express no view on whether the District Court properly did so based on the class action waivers.

3

throughout the United States and Canada. FedEx Services provides sales, marketing, and information technology support to the other FedEx subsidiaries. FedEx Corp., which has fewer than 300 employees, does not exercise day-to-day control over FedEx Ground or FedEx Services. Each company operates mostly with its own directors and officers. FedEx Corp. and FedEx Services are headquartered in Memphis, Tennessee, while FedEx Ground is headquartered in Moon Township, Pennsylvania.

Like thousands of other retail companies, BikerGear used FedEx Ground to ship products to its customers in the United States and Canada. The relevant pricing and shipping contracts were executed by BikerGear and FedEx Services, acting as an agent of FedEx Ground and FedEx Corp.

BikerGear alleges that FedEx engaged in two schemes. Under the first scheme (BikerGear calls it the "Upweighting Scheme"), FedEx Ground rated BikerGear's packages at weights higher than their actual weight, resulting in overcharges to BikerGear. Overall, BikerGear alleges that it was overcharged for roughly 150 of the 5,490 packages it shipped via FedEx Ground from July 2008 to August 2010. Under the second scheme (dubbed the "Canadian Customs Scheme"), FedEx Ground is alleged to have improperly charged BikerGear for

4

Canadian customs at least 150 times. FedEx admits that a glitch in its shipping software, now fixed, caused some wrongful customs charges.

After learning of the improper charges, BikerGear (both individually and on behalf of a putative class of FedEx shipping customers) sued all three defendants for violating the ICCTA and New York State's General Business Law. It also asserted civil RICO and RICO conspiracy claims against FedEx Corp. and FedEx Services under 18 U.S.C. § 1962(c) and (d). FedEx moved to dismiss the claims under Rule 12(b)(6).

Judge Seibel dismissed the ICCTA claim because BikerGear failed to allege that FedEx stated one amount on its invoices but charged a different amount. For reasons not relevant to this appeal, Judge Seibel also dismissed BikerGear's RICO conspiracy and state law claims. U1IT4Less, 896 F. Supp. 2d at 291–95. Judge Seibel declined, however, to dismiss BikerGear's substantive RICO claims, holding that the defendants' separate incorporation, without more, satisfied RICO's requirement that the "person" alleged to violate 18 U.S.C. § 1962(c) be distinct from the alleged "enterprise." Id. at 287–88.

After discovery the case was reassigned to Judge Forrest, who granted summary judgment to FedEx and dismissed the remaining RICO claims.

U1IT4Less, Inc. v. FedEx Corp., 157 F. Supp. 3d 341 (S.D.N.Y. 2016).  Contrary to Judge Seibel's earlier ruling on the motion to dismiss, Judge Forrest held that the mere fact of separate incorporation was not enough to satisfy the requirement that the RICO "person" and "enterprise" be distinct.  Id. at 351-52.  In addition, Judge Forrest concluded, BikerGear's RICO claims required a showing that the separate incorporation of FedEx Ground facilitated the racketeering enterprise allegedly run by FedEx Corp. and FedEx Services.  Id. at 350-51.  Because the evidence showed only that BikerGear "interacted with FedEx Ground and FedEx Services precisely as it would have had those sister subsidiaries in fact been divisions of a single FedEx corporation," Judge Forrest concluded that there was "no genuine question as to whether FedEx Corp. and FedEx Services are distinct from FedEx Ground for purposes of the RICO claims."  Id. at 351-52.

This appeal followed.

## DISCUSSION

We first address Judge Seibel's Rule 12(b)(6) dismissal of BikerGear's claim under the ICCTA, followed by Judge Forrest's grant of summary judgment dismissing the RICO claims.

6

### 1. 49 U.S.C. § 13708

Billing and collection obligations of motor carriers are set forth in 49 U.S.C. § 13708. Section 13708(b), entitled "False or misleading information," provides as follows: "No person may cause a motor carrier to present false or misleading information on a document about the actual rate, charge, or allowance to any party to the transaction." 49 U.S.C. § 13708(b).

BikerGear claims that FedEx violated the statute by perpetrating the Upweighting Scheme and the Canadian Customs Scheme and by failing to apply certain discounts to which BikerGear was allegedly entitled under its shipping contracts with FedEx. But in the same breath BikerGear expressly disclaims that FedEx "used rates other than their published tariff rates in computing charges." Second Am. Class Action Compl. ("SAC") ¶ 145. BikerGear's disclaimer is dispositive of the inquiry before us: Section 13708(b) requires only that FedEx accurately document the charges that it actually assesses its customers.

In arriving at that conclusion, we are inclined to view the text of the ICCTA as unambiguous. Cf. Solo v. United Parcel Serv. Co., 819 F.3d 788, 799 (6th Cir. 2016) ("We disagree with the district court that the language of § 13708(b) is ambiguous and see no need to look to its sparse legislative

7

history."). As noted, Section 13708(b) prohibits presentation of "false or misleading information" about the "actual rate, charge, or allowance." FedEx makes the compelling argument that the text requires only that the charge FedEx lists on a document match the charge FedEx assesses in fact. On the other hand, BikerGear argues that the term "actual" refers not to the charges FedEx assessed in fact, but to the lesser amounts BikerGear claims it should have been charged had FedEx properly weighed the packages. In our view, the phrases "false or misleading" and "actual" require a comparison between documented charges and those assessed in fact, and the plain text therefore favors FedEx's position. Cf. Actual, Black's Law Dictionary (10th ed. 2014) ("Existing in fact; real."); Actual, Oxford English Dictionary (3d ed. 2010) ("Existing in fact, real; carried out, acted in reality.").

On balance, then, FedEx offers the more plausible textual interpretation of Section 13708(b) and its use of the term "actual." But the issue of textual ambiguity is close enough that, in prudence, we turn to the legislative history of the statute to confirm our reading of the text.

In 1993 Congress sought to ban "off-bill discounting," "a practice by which motor carriers provide discounts, credits or allowances to parties other than the

8

freight bill payer, without notice to the payer."[3]  Regulations Implementing

Section 7 of the Negotiated Rates Act of 1993 ("STB Decision"), 2 S.T.B. 73 (1997),

1997 WL 106986, at *1; see also H.R. Rep. No. 103-359, at 11 (1993), as reprinted in

1993 U.S.C.C.A.N. 2534, 2538 (describing the "thrust" of "[t]he off-bill

discounting provision").  It did so by enacting the predecessor statute to Section

13708, which required the Interstate Commerce Commission (ICC), the agency

then tasked with administering the statute, to issue regulations to:

(1) prohibit motor carriers "from providing a reduction in a rate set forth in its

tariff or [shipping] contract" to any person other than the person "paying the

motor carrier directly" for the shipping service; (2) require motor carriers to

disclose the "actual rates, charges, or allowances" on documents presented to the

final payer; and (3) prohibit a "person from causing a motor carrier to present

false or misleading information on a document about the actual rate, charge, or

allowance to any party to the transaction" (i.e., the prohibition now contained in

Section 13708(b)).  Negotiated Rates Act of 1993, Pub. L. No. 103–180, § 7, 107

Stat. 2044, 2051–52 (codified at 49 U.S.C. § 10767), repealed by ICCTA, Pub. L.

---

[3] Typically, this occurs when shippers like BikerGear charge their customers based on the freight bill—providing the carriers' invoices as proof—but receive off-bill discounts from the carriers.  The shippers pocket the savings, and the customers wind up paying more than the net freight charges.

No. 104–88, § 102(a), 109 Stat. 803, 873–74 (1995).  According to the Surface

Transportation Board (STB), which succeeded the ICC and assumed the task of

administering Section 13708, Congress mandated that the ICC regulations

require motor carriers to accurately disclose "the <u>basis</u> for any rates, charges, or

allowances."  STB Decision, 1997 WL 106986, at *1 (emphasis added); <u>see also</u>

Regulations Implementing Section 7 of the "Negotiated Rates Act of 1993"

(Interpretive Decision), Ex Parte No. MC-180, 1994 WL 94482, at *1–2 (ICC Mar.

22, 1994) (interpreting prior statute to require disclosure of "actual" amount

"paid by the party, or agent, responsible for payment" and the "allowances or

adjustments" paid by the carrier to other parties for reasonable services).

In 1995 Congress repealed the requirement that the ICC issue regulations

banning off-bill discounting, <u>see</u> ICCTA § 102(a), 109 Stat. at 873–74, and instead

placed the disclosure and false information provisions in the statute itself, <u>see</u> 49

U.S.C. § 13708(a)–(b).[4]  The STB explained that although the statute no longer

---

[4] Section 13708, entitled "Billing and collecting practices," provides in full as follows:

    **(a) Disclosure.**--A motor carrier subject to jurisdiction under subchapter I
        of chapter 135 shall disclose, when a document is presented or
        electronically transmitted for payment to the person responsible
        directly to the motor carrier for payment or agent of such responsible
        person, the actual rates, charges, or allowances for any transportation

bans off-bill discounting, it does "affirmatively require carriers to disclose certain information <u>when they engage in the practice</u>."  STB Decision, 1997 WL 106986, at *2 (emphasis added); <u>see also</u> <u>id.</u> at *3 (explaining that Section 13708 "signal[s] a willingness to accept off-bill discounting, so long as it is clearly disclosed").

The legislative history—in particular the persuasive policy statements and interpretive decisions issued by the STB and the ICC—reinforces our reading of Section 13708's text.  <u>See</u> <u>Austin v. Town of Farmington</u>, 826 F.3d 622, 629 n.7 (2d Cir. 2016).  It shows that Congress intended to require disclosure of and prohibit false information about off-bill discounting or similar conduct, so that charges stated on disclosed documents match the charges the motor carrier assesses in fact.  <u>Cf.</u> Policy Statement on the Trucking Indus. Regulatory Reform Act of 1994,

---

service and shall also disclose, at such time, whether and to whom any allowance or reduction in charges is made.

**(b) False or misleading information.**--No person may cause a motor carrier to present false or misleading information on a document about the actual rate, charge, or allowance to any party to the transaction.

**(c) Allowances for services.**--When the actual rate, charge, or allowance is dependent upon the performance of a service by a party to the transportation arrangement, such as tendering a volume of freight over a stated period of time, the motor carrier shall indicate in any document presented for payment to the person responsible directly to the motor carrier that a reduction, allowance, or other adjustment may apply.

10 I.C.C.2d 251, 256, 1994 WL 580904, at *4 (Oct. 20, 1994) (explaining that off-bill discounting provision was "specifically directed at discrepancies between rates that are charged and rates that are set forth in tariffs"). In other words, Section 13708(b) prohibits a motor carrier from listing one amount on a bill when in reality it charges another.

But not all disputes about payments due for motor carrier transportation fall within the scope of Section 13708.[5] Here, although it disputes payment, BikerGear does not allege that FedEx stated one charge on an invoice but actually assessed a different charge. To the contrary, according to the complaint, FedEx's invoices accurately reflected previously stated rates and FedEx assessed the charges stated on its invoices—a situation that falls squarely outside the scope of the statute.[6] See SAC ¶¶ 145, 147 (alleging that FedEx represented to BikerGear's

---

[5] Otherwise, there would be many more than the twenty-five cases or so that have cited Section 13708 in the twenty-two years since the provision was enacted. Cf. Solo, 819 F.3d at 799 ("Neither we nor our sister circuits have yet examined the scope of § 13708.").

[6] We decline to decide whether the statute extends only to the disclosure of off-bill discounts, as the District Court believed, 896 F. Supp. 2d at 294, and not to off-bill surcharges. But see Regulations Implementing Section 7, 1994 WL 94482, at *2 (interpreting pre-ICCTA statute to "govern[] any discounts, allowances, or adjustments that come out of the published tariff charge or contract rate shown on the freight bill," but not to "cover charges assessed in addition to those specified in the tariff or contract."). Here, BikerGear alleges neither off-bill discounts nor off-bill surcharges.

bank and credit card companies that BikerGear "owed the stated amount[s]" and that those stated amounts were transmitted to FedEx).

For these reasons, we affirm the District Court's dismissal of BikerGear's claim under 49 U.S.C. § 13708(b).[7]

2. RICO

We now turn to BikerGear's effort to revive its RICO claims, which the District Court dismissed after granting summary judgment to FedEx on the ground that BikerGear failed to satisfy RICO's distinctness requirement under 18 U.S.C. § 1962(c).

Section 1962(c) makes it

> unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise'

---

[7] Because we hold that BikerGear has not alleged conduct covered by Section 13708(b), we express no view on whether a private right of action exists for violations of Section 13708, or whether BikerGear sufficiently identified a "person" who "caused" a "motor carrier" to present false information. See Solo, 819 F.3d at 799–800 (discussing the distinction between the terms "person" and "motor carrier").

13

that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).[8] A corporate entity can be sued as a RICO "person" or named as a RICO "enterprise," see 18 U.S.C. § 1961(3), (4), but the same entity cannot be both the RICO person and the enterprise, Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 89 (2d Cir. 1999) (citing Bennett v. U.S. Tr. Co. of N.Y., 770 F.2d 308, 315 (2d Cir. 1985)). Though Congress initially enacted the RICO statute to target organized crime, the Supreme Court has since identified the statute's basic purposes as "both protect[ing] a legitimate 'enterprise' from those who would use unlawful acts to victimize it and also protect[ing] the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a vehicle through which unlawful activity is committed." Cedric Kushner, 533 U.S. at 164 (quotation marks omitted).

BikerGear insists that the mere fact of separate legal incorporation satisfies the distinctness requirement under Section 1962(c). We disagree. As we have explained, "the plain language and purpose of the statute contemplate that a

---

[8] A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981).

14

person violates the statute by conducting an enterprise through a pattern of criminality," so "a corporate person cannot violate the statute by corrupting itself." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013) (citing Bennett, 770 F.2d at 315). A corporation can act only through its employees, subsidiaries, or agents. So "if a corporate defendant can be liable for participating in an enterprise comprised only of its agents—even if those agents are separately incorporated legal entities—then RICO liability will attach to any act of corporate wrong-doing and the statute's distinctness requirement will be rendered meaningless." In re ClassicStar Mare Lease Litig., 727 F.3d 473, 492 (6th Cir. 2013) (citing Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994)). Accordingly, a plaintiff may not circumvent the distinctness requirement "by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant," Riverwoods, 30 F.3d at 344—that consists, in other words, of a corporate defendant "corrupting itself," Cruz, 720 F.3d at 120.

Our prior decisions reflect this common sense principle, rooted in the language of Section 1962(c). In Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., we held that a corporation was not distinct from an alleged

15

enterprise consisting of the corporation and some of its own employees. 30 F.3d at 344–45. In <u>Discon, Inc. v. NYNEX Corp.</u>, we held that a parent corporation and its two wholly-owned subsidiaries were not distinct from an enterprise consisting of those three entities because each entity, like the corporation and its employees in <u>Riverwoods</u>, was "acting within the scope of a single corporate structure" and "guided by a single corporate consciousness." 93 F.3d 1055, 1064 (2d Cir. 1996), <u>vacated on other grounds</u>, 525 U.S. 128 (1998). We reaffirmed <u>Discon</u> in <u>Cruz v. FXDirectDealer, LLC</u>, holding that a wholly-owned subsidiary was not distinct from an enterprise consisting of itself and its parent because the allegations showed only that the two entities "operate[d] as part of a single, unified corporate structure." 720 F.3d at 121.

Of course, the principle we announced in <u>Discon</u> and <u>Cruz</u> has its limits and "does not foreclose the possibility of a corporate entity being held liable . . . where it associates with others to form an enterprise that is sufficiently distinct from itself." <u>Riverwoods</u>, 30 F.3d at 344. Where, for example, a natural person controls two active corporations that operate independently in different lines of business, receive independent benefits from the illegal acts of the enterprise, and affirmatively <u>use</u> their separate corporate status to further the illegal goals of the

enterprise, we will regard each of the three entities as distinct from their coordinated enterprise under Section 1962(c).  See Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 263–64 (2d Cir. 1995).[9]

With these background principles in mind, and for the following reasons, we reject BikerGear's argument that FedEx Ground, the alleged RICO enterprise, is sufficiently distinct from the alleged RICO persons, FedEx Corp. and FedEx Services, solely by virtue of their separate legal incorporation.  First, BikerGear acknowledges the following facts suggesting FedEx's unified corporate structure: (i) FedEx Corp. is a holding company that operates exclusively through wholly-owned subsidiaries, (ii) FedEx's primary business is shipping, and (iii) FedEx Ground runs a domestic ground shipping operation exclusively on behalf of FedEx Corp.  Appellant's Br. 13.  Second, BikerGear presented no evidence showing that any FedEx entity operated outside of a unified corporate structure

---

[9] One academic survey of the differing circuit law on this issue explains that in our circuit, "where an association in fact enterprise is allegedly comprised of a subsidiary, with or without agents, controlled by a parent corporation," the existence of a single corporate consciousness can be disproven by showing that the alleged criminal activities are distinguishable from the subsidiary's ordinary business.  See Laurence A. Steckman, RICO Section 1962(c) Enterprises and the Present Status of the "Distinctness Requirement" in the Second, Third and Seventh Circuits, 21 Touro L. Rev. 1083, 1096–97, 1270, 1281 (2006).

guided by a single corporate consciousness.  See Cruz, 720 F.3d at 121.  Nor did BikerGear present evidence that FedEx Corp.'s choice of corporate structure was in any way related to (let alone used to further) the racketeering activity alleged in the complaint.[10]  Compare Discon, 93 F.3d at 1064, with Securitron Magnalock, 65 F.3d at 263–64; see Cedric Kushner, 533 U.S. at 164.

Viewing the record in the light most favorable to BikerGear, we hold that no reasonable juror could consider FedEx Corp.'s and FedEx Service's participation in FedEx Ground's affairs as anything other than participation in FedEx Corp.'s own ground shipping business.  Even if BikerGear could prove a pattern of racketeering activity, it could show at most that FedEx "corrupt[ed] itself."  Cruz, 720 F.3d at 120.

It is true, as BikerGear points out, that the three FedEx defendants have different board members and do not participate in each other's day-to-day operations.  But at most this shows that the separate legal identity of each entity is genuine under state corporate law.  Under Discon and Cruz, merely describing the governance and management structure of FedEx's corporate family is inadequate to satisfy RICO's distinctness requirement.  BikerGear must also

---

[10] For example, there is no record evidence that FedEx Ground's operations were infiltrated for racketeering activity.  See Steckman, supra note 9, at 1096.

18

show that the corporate structure suggests a distinct corporate consciousness related to the alleged racketeering activity.

BikerGear invites us to distinguish Discon and Cruz by observing that the alleged RICO enterprises in those cases were associations-in-fact comprised of all the defendant corporations combined, while the alleged enterprise here is a discrete subsidiary. In our view, this difference is immaterial. Whether a corporate defendant is distinct from an association-in-fact enterprise turns on whether the enterprise is more than the defendant carrying out its ordinary business through a unified corporate structure unrelated to the racketeering activity—not on whether the plaintiff opts to sue all or only some members of the enterprise. Compare Discon, 93 F.3d at 1064, with Securitron Magnalock, 65 F.3d at 263–64.

In addition to being compelled by Discon and Cruz, our holding comports with the Supreme Court's decision in Cedric Kushner. There the Court held that the alleged natural RICO "person," the boxing promoter Don King, was distinct from Don King Productions, the alleged RICO corporate "enterprise," of which Don King was president, sole shareholder, and employee. 533 U.S. at 160, 163. King allegedly conducted the affairs of Don King Productions through a pattern

19

of racketeering activities consisting of fraud and other RICO predicate crimes.

Id. at 160–61. In concluding that King and Don King Productions were distinct, however, the Supreme Court emphasized that its holding was limited to the circumstances in which "a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner—whether he conducts those affairs within the scope, or beyond the scope, of corporate authority."[11] Id. at 166. As for both corporate employees and corporate entities, the Supreme Court suggested, Congress had in mind the "protect[ion of] the public from those who would run organizations in a manner detrimental to the public interest." Id. at 165 (quotation marks omitted). Indeed, the Court described our earlier decisions relating to the distinctness issue (for example, Discon) as "significantly different"—a strong signal that it was not addressing cases in which, as here, a corporate person conducts the affairs of an enterprise consisting only of

---

[11] Elsewhere in its opinion, the Supreme Court strove repeatedly to limit and distinguish its holding. See id. at 163 (explaining that the purpose of incorporation is to create a legal entity distinct from "the natural individuals who created it, who own it, or whom it employs"); id. at 164 (noting that Second Circuit cases involving corporate entities "involved significantly different allegations compared with the instant case"); id. at 165 ("[I]n [the] present circumstances the statute requires no more than the formal legal distinction between 'person' and 'enterprise' (namely, incorporation) that is present here." (emphasis added)); id. at 166 (noting that the Court's holding "says only that the corporation and its employees are not legally identical"); id. (holding "simply" that RICO "applies when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner").

corporate members of its wholly-owned corporate family. Id. at 164; see also Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1356 (11th Cir. 2016); ClassicStar Mare, 727 F.3d at 492. If, as BikerGear contends, the mere fact of separate incorporation alone were enough to satisfy the distinctness requirement in all RICO cases involving corporate entities as the alleged persons and enterprise, the Court in Cedric Kushner would not have distinguished decisions like Discon. And on the record in this case FedEx does not remotely resemble an organization being run "in a manner detrimental to the public interest." Cedric Kushner, 533 U.S. at 165.

Finally, we note that in analogous contexts the majority of our sister circuits appear to agree that the fact of separate incorporation alone fails to satisfy RICO's distinctness requirement. See Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 449 (1st Cir. 2000) ("Without further allegations, the mere identification of a subsidiary and a parent in a RICO claim fails the distinctiveness requirement"); Gasoline Sales, Inc. v. Aero Oil Co., 39 F.3d 70, 73 (3d Cir. 1994); NCNB Nat'l Bank of N.C. v. Tiller, 814 F.2d 931, 936 (4th Cir. 1987), overruled on other grounds by Busby v. Crown Supply, Inc., 896 F.2d 833 (4th Cir. 1990); N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare, 781 F.3d 182, 203 (5th Cir. 2015); ClassicStar Mare, 727 F.3d at 492; Bucklew v. Hawkins,

21

*Ash, Baptie & Co.*, 329 F.3d 923, 934 (7th Cir. 2003); Fogie v. THORN Americas, Inc., 190 F.3d 889, 898 (8th Cir. 1999); George v. Urban Settlement Servs., 833 F.3d 1242, 1249 (10th Cir. 2016) (citing Brannon v. Boatmen's First Nat. Bank of Okla., 153 F.3d 1144, 1149 (10th Cir. 1998)); Ray, 836 F.3d at 1356–57; cf. Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639, 883 F.2d 132, 141 (D.C. Cir. 1989) (collecting cases), on reh'g in part, 913 F.2d 948 (D.C. Cir. 1990). Some circuit courts have explained what "more" needs to be shown, consistent with Cedric Kushner and the purpose of the RICO statute itself. We see no need to do the same since, for all the above reasons, on this record, we conclude that BikerGear failed to satisfy RICO's distinctness requirement.[12]

---

[12] The concurrence emphasizes that we do not here endorse the "facilitation" test that the District Court adopted and that some of our sister circuits have imposed. See ClassicStar Mare, 727 F.3d at 492 ("[C]orporate defendants are distinct from RICO enterprises when they are functionally separate, as when they perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering activity."); Bucklew, 329 F.3d at 934 (requiring plaintiffs to show that "the enterprise's decision to operate through subsidiaries rather than divisions somehow facilitated its unlawful activity"); see also David B. Smith & Terrance G. Reed, Civil RICO ¶ 3.07[2][a] (2017) (explaining that most circuits "hold that a subsidiary corporation cannot constitute the enterprise through which a defendant parent corporation conducts racketeering activity, at least in the absence of exceptional circumstances, such as a showing that the subsidiary was set up solely for the purpose of perpetrating a fraud"). But even if we adopted such a test, we agree with the District Court that BikerGear failed to satisfy it in this case. See U1IT4Less, 157 F. Supp. 3d at 350-52.

## CONCLUSION

To summarize: (1) Section 13708 of the ICCTA requires shipping documents to truthfully disclose the charges that a motor carrier in fact assesses, and prohibits a motor carrier from stating it will charge one amount when in reality it charges another; and (2) where, as here, the RICO persons and the RICO enterprise are corporate parents and wholly-owned subsidiaries that "operate within a unified corporate structure" and are "guided by a single corporate consciousness," the mere fact of separate incorporation, without more, does not satisfy RICO's distinctness requirement under Section 1962(c).

We have considered BikerGear's remaining arguments and conclude that they are without merit. The judgment of the District Court is **AFFIRMED**.

Woods, *District Judge*, concurring in part and concurring in the judgment:

I concur in the judgment because I am persuaded that this conclusion is mandated by the Second Circuit's decision in *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2013). I write separately only because the decision to reaffirm the approach this Circuit took to the application of the "distinctness" principle in this context prior to *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), was made four years ago by the panel in *Cruz*. Given that we are not working with a blank canvas—*Cruz* dictates the outcome here—I decline to paint in an analysis here to reconcile the court's decision in *Cruz* with *Cedric*.[1] As a result, I do not join in the discussion on pages 19 to 22 of this decision describing how the Supreme Court's ruling in *Cedric* supports this conclusion.

*Cruz* reaffirmed the principle that "corporations that are legally separate but 'operate within a unified corporate structure' and 'guided by a single corporate consciousness' cannot be both the 'enterprise' and the 'person' under

---

[1] As the opinion notes, our Circuit's approach in *Cruz*, which cabins the Supreme Court's decision in *Cedric* to its facts, is consistent with that taken by a number of other federal courts. Several commenters have remarked on this trend. *See, e.g.*, William B. Ortman, *Parents, Subsidiaries, and RICO Distinctiveness*, 73 U. Chi. L. Rev. 377, 398 (2006) (arguing that circuit courts have "ignored the Supreme Court's repeated directives against the use of purposive interpretation to extratextually cabin RICO liability"); Laurence A. Steckman, *RICO Section 1962(c) Enterprises and the Present Status of the "Distinctness Requirement" in the Second, Third and Seventh Circuits*, 21 Touro L. Rev. 1082, 1296 (2006) (observing that "Cedric . . . plainly stated that bare legal distinctness is all the 'distinctness' RICO requires. . . . The Second, Third and Seventh Circuits, plainly, remain committed to their pre-Cedric analytical paradigms.")

§ 1962(c)." *Cruz*, 720 F.3d at 121.  In support, *Cruz* cited to the Second Circuit's 1996 decision in *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998).  In reaffirming the rule established in *Discon*, the opinion in *Cruz* did not analyze the impact of the Supreme Court's intervening decision in *Cedric* on the Circuit's approach to the "distinctness" principle.  The analysis of *Cedric* presented in this case—limiting the Supreme Court's holding in *Cedric* to its facts, applicable only to distinctness analysis involving an individual owner and her wholly-owned corporation, and equating a separately organized subsidiary of a corporation to an "agent or employee" of a corporation—was not stated overtly in *Cruz*.

Nor did *Cruz* expressly grapple with the Second Circuit's first decision addressing the distinctness principle following *Cedric*—*City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425 (2d Cir. 2008).  In *Smokes-Spirits*, the panel described the Supreme Court's holding in *Cedric* in a way that is at least arguably broader than the approach reaffirmed in *Cruz*.  The *Smokes-Spirits* court wrote:

> In *Cedric Kushner*, the Supreme Court explained that the RICO "person" and alleged "enterprise" must be only legally, and not necessarily actually, distinct. . . . The City has alleged . . . that the enterprise is an innocent corporation, with its own legal basis for existing, and the persons are employees or officers of the organization unlawfully directing the enterprise's racketeering activities.

2

*Id.* at 448.  In light of this language, I understand why Judge Seibel, writing before *Cruz* was handed down, reached her initial conclusion regarding the proper application of the distinctness principle after *Cedric*.  *U1IT4less, Inc. v. FedEx Corp.*, 896 F. Supp. 2d 275, 288 (S.D.N.Y. 2012).

I emphasize too that in affirming the ruling below, we are not endorsing the test applied by Judge Forrest in her opinion, namely "whether the fact of separate incorporation facilitated the alleged unlawful activity."  Judge Forrest derived the "facilitation" test from the Seventh Circuit's ruling in *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923 (2003).  While *Bucklew* has been cited favorably by a number of courts evaluating this issue, the test has no foundation in the jurisprudence of the Second Circuit, and the application of existing circuit doctrine suffices to resolve this case.[2]

---

[2] While decided two years after *Cedric*, *Bucklew* does not mention the Supreme Court's decision in its analysis.  Moreover, the single paragraph of analysis of this issue in *Bucklew* relies on cases involving the Sherman Act, principally *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).  *Bucklew*, 329 F.3d at 934.  In *Cedric*, Mr. King argued that *Copperweld* supported a ruling in his favor.  The Supreme Court rejected that argument, stating that its conclusion that legal separateness was all that was required by RICO was not "inconsistent with antitrust law's intracorporate conspiracy doctrine; that doctrine turns on specific antitrust objectives."  *Cedric*, 533 U.S. at 166.